960 F.2d 152
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Maria AVILA, A/K/A Patty Reyes, Adrian Nieves Maldonado, Ana
Rosa Reyes, and Jose Reyes, Defendants-Appellants.
 Nos. 90-30221, 90-30385, 90-30386 and 90-30401.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 3, 1992.
Decided April 16, 1992.
 
 1
 Before EUGENE A. WRIGHT and ALARCON, Circuit Judges, and FONG, District Judge*
 
 
 2
 MEMORANDUM**
 
 
 3
 Maria Avila, Adrian Maldonado, Ana Reyes (A. Reyes), and Jose Reyes (J. Reyes) appeal from the judgment of conviction. A. Reyes and Maldonado seek reversal of their sentences. We discuss each contention and the facts pertinent thereto under separate headings. We affirm the judgment of conviction as to each appellant and the sentences imposed against A. Reyes and Maldonado.
 
 DISCUSSION
 I. Sufficiency of the Evidence
 
 4
 The appellants contend that the Government failed to present sufficient evidence to support their convictions for specific acts of money laundering (18 U.S.C. § 1956(a)(1)(A) & (B)), conspiracy to launder money (18 U.S.C. § 1956(a)(1)(A) & (B); 18 U.S.C. § 371), and conspiracy to distribute cocaine (21 U.S.C. § 846).
 
 
 5
 In considering a challenge to the sufficiency of the evidence, where the issue has been preserved for appeal, we must determine whether " 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Floyd, 945 F.2d 1096, 1098 (9th Cir.1991) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original)).
 
 
 6
 In the instant matter, only Avila and A. Reyes objected to the sufficiency of the evidence at the close of trial. A failure to object to the sufficiency of the evidence at the close of trial waives the issue on appeal. Id. at 1098; United States v. Mora, 876 F.2d 76, 77 (9th Cir.1989). Where such a waiver has occurred, we nonetheless review the sufficiency of the evidence under the less stringent plain error standard. Floyd, at 1098; Mora, at 77. Thus, we review the sufficiency of the evidence to support the judgment of conviction of Maldonado and J. Reyes for plain error. Under the plain error rule, an appellant must demonstrate that his conviction involved a "manifest miscarriage of justice." United States v. Patton, 771 F.2d 1240, 1243 (9th Cir.1985).
 
 A. Specific Acts of Money Laundering
 
 7
 In order to support a conviction for money laundering under 18 U.S.C. § 1956(a)(1), the Government has the burden of proving beyond a reasonable doubt that the defendant (1) conducted a financial transaction that involved the proceeds of unlawful activity, (2) that he knew the property involved was the proceeds of some form of unlawful activity, and that he did so either (3) with the intent to promote the unlawful activity (18 U.S.C. § 1956(a)(1)(A)(i)) or (4) with the knowledge that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of those proceeds (18 U.S.C. § 1956(a)(1)(B)(i)). United States v. Montoya, 945 F.2d 1068, 1076 (9th Cir.1991). All four appellants were convicted of conspiracy to launder money and specific acts of money laundering under 18 U.S.C. § 1956(a)(1)(A) & (B) and 18 U.S.C. § 371 for their respective involvement in various wire transfers and purchases of automobiles and residences. They contend that their convictions were not supported by the evidence because the Government failed to satisfy the requisite elements of section 1956(a)(1). We reject appellants' contention.
 
 
 8
 1. "Financial Transaction"
 
 
 9
 J. Reyes and Maldonado contend that the purchase of an automobile or residence with cash is not a "financial transaction" within the meaning of section 1956(a)(1). This argument ignores the definitional portion of the statute. Under section 1956(c)(3), "the term 'transaction' includes a purchase [or] sale...." Furthermore, section 1956(c)(4)(A) defines the term "financial transaction" as a transaction "involving the movement of funds by wire or other means...." Because the act of buying a house or automobile with cash is a purchase involving the movement of funds, we hold that the Government has satisfied the financial transaction requirement of section 1956(a)(1). See also United States v. Blackman, 904 F.2d 1250, 1257 (8th Cir.1990) (holding that the sale of a truck between the defendant and a third party was a financial transaction within the meaning of section 1956 because "[t]he term includes the purchase, sale or disposition of any kind of property as long as the disposition involves a monetary instrument.")
 
 
 10
 2. Proceeds of "Specified Unlawful Activity"
 
 
 11
 Appellants contend that the Government did not present sufficient evidence to prove that the funds used in their suspect financial transactions were proceeds of drug distribution. They argue that the Government's proof was inadequate because it consisted solely of evidence that appellants wired large sums of money and purchased residences and motor vehicles during a period in which they had no legitimate source of income. Avila argues separately that the Government's evidence against her was inadequate because testimony at trial demonstrated that some, if not all of the money used in her transactions was legitimate income derived from her ownership of a clothing store known as "L.A. Fashions."
 
 
 12
 The appellants correctly cite Blackman for the proposition that the Government's case "cannot rely exclusively on proof that a defendant charged with using proceeds from an unlawful activity has no legitimate source of income." 904 F.2d at 1257. Blackman also states, however, that "the government's burden on a particular element of [money laundering] may be satisfied by circumstantial evidence as long as it is sufficient to prove that element beyond a reasonable doubt." Id.
 
 
 13
 Reviewing the record in the light most favorable to the Government, we conclude that the Government presented sufficient circumstantial evidence from which a rational jury could infer that appellants' wire transfers and purchases involved proceeds of drug distribution. Contrary to the appellants' assertion, the Government's evidence did not consist solely of proof that they had purchased expensive items and transferred large sums of money without a legitimate source of income. Instead, the jurors were also presented with substantial evidence from which they could infer that the money used to purchase items and wired to Los Angeles was derived from the illegal sale of cocaine.
 
 
 14
 We also reject Avila's claim that her ownership of L.A. Fashions defeated the Government's evidence by establishing that she had a legitimate source of income to support the suspect financial transactions. Contrary to Avila's contention, the Government was not required to disprove that any of the money used in Avila's transactions was derived from a legitimate source. Instead, the Government was required to present the jurors with evidence from which they could infer beyond a reasonable doubt that the funds were the proceeds of drug distribution. The Government has met this burden. In addition to evidence that appellants derived substantial income from cocaine sales, the Government also demonstrated that L.A. Fashions was not operated as a normal commercial store. Katie David, the manager of the mall where L.A. Fashions was located, testified that the store had only a limited inventory, did no advertising, and was open on irregular hours. She also noted that the revenues from the store amounted to approximately $1000 per month, a figure well below the $3000 generally required to keep a store of that kind in operation.
 
 3. Knowledge of Unlawful Source of Proceeds
 
 15
 Avila argues that the Government failed to prove that she knew any of the money came from the distribution of drugs because a government informant, Juan Villareal, testified at trial that Hispanic men often deny their women knowledge of what they are doing. A. Reyes claims that her involvement in the purchase of the car and house was in keeping with the Idaho custom of having husbands and wives co-sign agreements for major expenditures. We disagree.
 
 
 16
 The evidence produced by the Government demonstrates that A. Reyes was present at the scene of at least one major drug transaction in which a diaper bag belonging to her was used to transport 20 ounces of cocaine. The record also shows that narcotics were stored in Avila's place of residence, and that Avila's Cadillac Cimarron was used to transport cocaine. Thus, the evidence was sufficient to persuade a rational jury that A. Reyes and Avila had knowledge that the money came from the distribution of narcotics.
 
 4. Intent to Promote Unlawful Activity
 
 17
 The appellants contend that the Government failed to prove that their wire transfers and purchases were conducted with an intent to promote the distribution of drugs. This contention is without merit.
 
 
 18
 A representative from the Western Union wire service testified that drug traffickers commonly use wire services to launder drug money. The expert also testified that certain factors are indicative of drug-related transfers, including (1) the use of business fronts, or legitimate businesses that may or may not generate profits, to account for funds derived from illegal activities, (2) the use of code words in wire communications, (3) the frequency of the transfers, (4) whether the transfer is for an amount greater than $500, and (5) whether the transfer is destined for a city which serves as a base for drug trafficking organizations.
 
 
 19
 Jose Valladares testified that members of J. Reyes' drug operation used wire transfers to move money to Los Angeles to purchase drugs. Valladares also testified that these transfers involved the use of code words. We are persuaded that the Government presented sufficient evidence to convince a rational jury that the appellants intended to promote drug activity through the use of wire transfers.
 
 
 20
 The Government presented evidence that motor vehicles were purchased by members of the conspiracy. A rational jury could infer that these motor vehicles were used to further the appellants' drug trafficking operation. Evidence was presented that members of the drug operation smuggled cocaine from Los Angeles to Idaho in spare tires and in wheel rims. The record also shows that Avila's Cadillac, as well as a Chevrolet pickup and minivan owned by Maldonado and A. Reyes were used to transport cocaine. Videotapes were introduced into evidence that depicted Avila's Cadillac and Maldonado's Corvette at the scene of drug transactions. The odometers on some of appellants' vehicles, such as Maldonado's and A. Reyes' 1989 Chevrolet pickup, showed that they had a high mileage reading. This evidence could support an inference that these vehicles were used to make trips to and from Los Angeles.
 
 
 21
 The Government also presented evidence that demonstrates that the Verdugo, Foothill, and Fredregill residences were used to facilitate the distribution of cocaine, or to house members of the drug organization travelling to Idaho.
 
 
 22
 5. Intent to Conceal Proceeds of Unlawful Activity
 
 
 23
 Appellants contend that the Government failed to prove that their purchases of motor vehicles and residences were conducted in order to conceal or disguise drug proceeds, because these transactions were made openly. We conclude that the Government was not required to prove that the appellants intended to conceal those proceeds.
 
 
 24
 Having already proved that the motor vehicles and residences were used to promote the drug operation under section 1956(a)(1)(A)(i), the Government was not under any obligation to prove that the purchases were also intended to conceal or disguise drug proceeds under 1956(a)(1)(B)(i). As we noted in Montoya, "subsections (A)(i) and (B)(i) are set forth in the disjunctive." 945 F.2d at 1076. Thus, the Government's evidence needs to satisfy only one of these two intent requirements. Id. Because the evidence was sufficient to persuade a rational jury that each of the other elements of moey laundering were satisfied, we need not consider whether sustaining the judgment on this charge would result in a manifest miscarriage of justice.
 
 B. Conspiracy Charges
 
 25
 Avila, A. Reyes, and Maldonado contend that the Government failed to present sufficient evidence to convict them of conspiracy to launder money. All four appellants also contend that there was insufficient evidence to convict them of conspiracy to distribute cocaine.
 
 
 26
 The elements of conspiracy are: (1) an agreement to accomplish an illegal objective, (2) coupled with one or more acts in furtherance of the illegal purpose, and (3) the requisite intent necessary to commit the underlying offense. United States v. Penagos, 823 F.2d 346, 348 (9th Cir.1987). The existence of a conspiracy may be proven by circumstantial evidence that the defendants acted together for a common illegal purpose. Penagos, 823 F.2d at 348. Once a conspiracy exists, evidence establishing beyond a reasonable doubt a defendant's connection with the conspiracy, even though slight, is sufficient to convict a defendant of knowing participation in the conspiracy. United States v. Skillman, 922 F.2d 1370, 1373 (9th Cir.1990), cert. dismissed, 112 S.Ct. 353 (1991); Penagos, 823 F.2d at 348.
 
 1. Conspiracy to Launder Money
 
 27
 As discussed above, the evidence was sufficient to persuade a rational jury beyond a reasonable doubt that the appellants engaged in money laundering transactions in violation of 18 U.S.C. § 1956(a)(1). The evidence also supports the inference that the appellants agreed to commit specific acts of money laundering. All of the transactions for which the appellants were convicted involved at least two persons who had some connection to the appellants' drug distribution activities. Furthermore, the evidence of the nature of these transactions demonstrated that there was an agreement between the members of the conspiracy to launder money.
 
 2. Conspiracy to Distribute Cocaine
 
 28
 The appellants contend that the Government failed to prove a single overall conspiracy as charged in the indictment, but instead proved that two separate conspiracies to distribute cocaine existed--one in Los Angeles and one in Idaho. Appellants argue that the proof of two conspiracies resulted in a fatal variance between the indictment and the proof offered at trial. "The question of whether a single conspiracy has been proved, rather than multiple conspiracies, is a recurring one, which is essentially a question of the sufficiency of the evidence." United States v. Bibbero, 749 F.2d 581, 586 (9th Cir.1984), cert. denied, 471 U.S. 1103 (1985).
 
 
 29
 In United States v. Arbelaez, 719 F.2d 1453, 1457-58 (9th Cir.1983), cert. denied, 467 U.S. 1255 (1984), we stated:
 
 
 30
 To establish the existence of a single conspiracy, as compared to multiple conspiracies, the basic "test is whether there was 'one overall agreement' to perform various functions to achieve the objectives of the conspiracy"....
 
 
 31
 To determine whether the evidence supports the existence of one overall criminal venture, relevant areas of inquiry include "the nature of the scheme; the identity of the participants; the quality, frequency, and duration of each conspirator's transactions; and the commonality of times and goals."
 
 
 32
 (citations omitted); see also United States v. Brown, 912 F.2d 1040, 1043 (9th Cir.1990) (quoting Arbelaez ).
 
 
 33
 After reviewing the record in the light most favorable to the Government, we conclude that there was sufficient evidence from which a rational jury could infer that appellants were engaged in a single conspiracy, and that there was no material variance between the Government's proof at trial and the indictment. The Government's evidence revealed that the appellants initially became involved in the sale of cocaine in Los Angeles. All four appellants them moved to Idaho and continued to distribute cocaine after J. Reyes was informed that he could get more money for the cocaine in Idaho. After the appellants moved to Idaho, they and other members of the conspiracy regularly traveled back to Los Angeles to replenish their drug supply. In addition, J. Reyes induced numerous individuals who had sold drugs for him in Los Angeles to come and sell drugs for him in Idaho, including Juan and Jose Valladares, Gabriel Delgado, and Enrique Rivera. Rather than suggesting the existence of separate conspiracies, this evidence shows that the conspiracy merely changed its principal place of business. The illegal activity in question (i.e. the distribution of cocaine) remained the same, as did many of the participants.
 
 
 34
 A. Reyes, Avila, and Maldonado also contend that the evidence does not show that they were members of the conspiracy. The record contains evidence of each appellant's involvement in the sale of cocaine.
 
 
 35
 The Government presented evidence that A. Reyes and Maldonado were involved in the sale of 20 ounces of cocaine to a government informant at a motel in Pocatello, Idaho. The record also demonstrates that Avila's name was in a drug ledger found at her Verdugo Street residence. Avila wrote a note to J. Reyes in the ledger that states "I love you." Material used to package and weigh drugs and small amounts of drugs were seized during a search of Avila's residence.
 
 
 36
 The Government also presented evidence that a white Cimarron Cadillac registered in Avila's name contained a secret compartment in the trunk. Narcotics agent Clark Rollins testified that this type of secret compartment is commonly used to smuggle drugs in cars. Only a slight connection is necessary to prove a defendant's involvement in a conspiracy. Skillman, 922 F.2d at 1373. The Government met its evidentiary burden in this matter as to each appellant.
 
 II. Constructive Amendment of the Indictment
 
 37
 On June 14, 1990, approximately four weeks prior to trial, the grand jury issued a third superceding indictment against the four defendants. Appellants were charged with conspiracy to distribute cocaine "from an unknown date, but at least between the dates of January 1989 and January 8, 1990." Appellants argue that the Government presented evidence of their involvement in cocaine and heroin trafficking prior to 1989. They contend that the trial court committed reversible error in admitting this evidence because this proof effected a constructive amendment of the indictment. We conclude that the admission of the challenged evidence of conduct that occurred before 1989 was not a constructive amendment of the indictment.
 
 
 38
 We explained in United States v. Von Stoll, 726 F.2d 584 (9th Cir.1984), that
 
 
 39
 [a]n amendment of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by the prosecutor or a court after the grand jury has last passed on them.
 
 
 40
 Id. at 586. Constructive amendment has been found where a "complex of facts distinctly different from those set forth in the charging instrument" is proved at trial. Id.
 
 
 41
 The evidence of prior drug-related conduct in California did not diverge from the allegations of the indictment. The indictment clearly charged a conspiracy beginning at some unknown time prior to January 1989. This testimony merely corroborated the evidence that appellants distributed cocaine in Idaho after January 1989. There is no reason to believe the grand jury would not have indicted the appellants had this evidence been available to it. See Von Stoll, 726 F.2d at 586 (noting that "courts have found constructive amendments where the crime charged was substantially altered at trial, so that it was impossible to know whether the grand jury would have indicted for the crime actually proved.").
 
 III. Evidence of Gang Involvement
 
 42
 Appellants contend that the trial court erred in allowing the Government to introduce evidence that their drug operation was connected with a Los Angeles street gang known as the 38th Street Gang. They argue that the evidence of association with a street gang was irrelevant and prejudicial, and should have been excluded by the district court in response to Jose Reyes' pretrial motion in limine.
 
 
 43
 "A trial court has great latitude in the admissibility of evidence. Decisions whether evidence is relevant (Federal Rules of Evidence 401) and whether its probative value outweighs unfair prejudice to the defendants (Federal Rules of Evidence 403) are committed to the court's sound discretion." United States v. Gilley, 836 F.2d 1206, 1213 (9th Cir.1988). Under Rule 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Id. at 1213.
 
 
 44
 In the instant matter, the Government presented a limited amount of gang-related evidence. Most of this evidence was contained in the testimony of Jose Valladares. The Government offered evidence concerning the 38th Street Gang in order to show how Valladares became acquainted with J. Reyes. This testimony was relevant to show how the conspiracy was formed. It was also relevant to prove that various members of the drug operation used their gang nicknames and code words in conducting drug and money laundering transactions. The district court properly admitted evidence of gang affiliation and participation to show the origin and the manner in which the conspiracy conducted its illegal activities.
 
 
 45
 Appellants respond that proof of the origin of the conspiracy and the "common thread" linking the individuals involved in J. Reyes' drug operation was unnecessary and therefore prejudicial because it could have been established by demonstrating that the appellants all had family relationships to each other. This argument is devoid of merit. Although the appellants do have family ties to one another, other members of the conspiracy did not. Furthermore, we have held that "proof of a familial relationship with a conspirator is not sufficient to connect the accused to a conspiracy." United States v. Loya, 807 F.2d 1483, 1488 (9th Cir.1987). The district court did not abuse its discretion in admitting evidence that appellants' drug operation had connections to gang activity.
 
 IV. Severance
 
 46
 Before trial, A. Reyes, Avila, and Maldonado filed individual motions to sever their respective trials from that of the other defendants pursuant to Rule 14 of the Federal Rules of Criminal Procedure. The district court refused to grant severance. Appellants did not renew their motions to sever at the close of trial. Appellants now contend that the district court abused its discretion in denying their severance motions. We decline review of this issue because it has been waived. United States v. Plache, 913 F.2d 1375, 1378 (9th Cir.1990) (failure to renew a motion to sever at the close of trial waives appellate review); United States v. Smith, 893 F.2d at 1573, 1581 (9th Cir.1990) (same).
 
 V. Jury Selection Challenges
 
 47
 Appellants object to the manner in which the jury was selected. First, they argue that the members of the jury panel did not represent a fair cross-section of the community in violation of the Sixth Amendment and the Jury Selection and Service Act, 28 U.S.C. §§ 1861-63. Second, they assert that the Government's use of a peremptory challenge to remove the only Hispanic juror deprived them of their Fifth Amendment right to due process.
 
 
 48
 We decline review of appellants' claim that the jury panel did not represent a fair cross-section of the community, because appellants raise the issue of improper jury selection for the first time on appeal. Rule 12(b) of the Federal Rules of Criminal Procedure forecloses objections to the petit jury array that are not made prior to trial. See Shotwell Mfg. Co. v. United States, 371 U.S. 341, 362-63 (1963) (petitioners' objection that the clerk of the district court failed to employ a jury selection method designed to secure a cross-section of the population was lost under Rule 12(b)(2) because petitioners failed to object prior to trial); United States v. Hearst, 638 F.2d 1190, 1196 (9th Cir.1980), cert. denied, 451 U.S. 938 (1981) (challenges to the selection of the petit jury are waived under Rule 12(b)(2) if not raised before trial). Similarly, in order to challenge compliance with the provisions of the Jury Selection and Service Act, a defendant must move to dismiss the indictment or stay the proceedings against him "before the voir dire examination begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor...." 28 U.S.C. § 1867(a); Paige v. United States, 493 F.2d 22, 23 (9th Cir.), cert. denied, 417 U.S. 935 (1974) (defendant's post-trial objection to the jury selection was too late under both Fed.R.Crim.P. 12(b)(2) and 28 U.S.C. § 1867(a)).
 
 
 49
 We also refuse to consider appellants' argument that the Government improperly used its peremptory challenge to exclude the only Hispanic juror, because the appellants failed to object to this challenge at trial. Dias v. Sky Chefs, 948 F.2d 532, 534 (9th Cir.1991), cert. denied, 60 U.S.L.W. 3537 (U.S., March 9, 1992) (No. 91-1167).
 
 
 50
 VI. Prosecutorial Misconduct in Closing Argument
 
 
 51
 Appellants contend that the Government improperly vouched for the credibility of Jose Valladares. The prosecutor made the following statement during closing argument:
 
 
 52
 Counsel suggests you can't believe Jose Valladares. Jose Valladares is a life-long gang member; that's his life, that's his blood. Jose Reyes is his friend. He not only admitted his guilt; he is going to prison, and when he gets out of prison, he's going to be deported from this country. And he took the stand and had to testify about his friend. Do you think anyone takes that lightly? Do you think that a person in his situation would ever get back to his home or family after doing that? Jose Valladares, I would suggest to you is a credible witness. He has admitted his own guilt and he also has told the truth about what he knows.
 
 
 53
 The appellants also contend that the Government's closing argument was intended to incite passion and prejudice against them. Because the appellants failed to object at trial, this court reviews these alleged errors "in the context of the entire record to determine whether [they] rise[ ] to the level of 'plain error.' " United States v. Wallace, 848 F.2d 1464, 1473 (9th Cir.1988) (quoting United States v. Young, 470 U.S. 1, 16 (1985)).
 
 A. Vouching
 
 54
 Although a prosecutor generally may not express his belief in the credibility of a government witness, United States v. McKoy, 771 F.2d 1207, 1210-11 (9th Cir.1985), he must be given a reasonable latitude to fashion a closing argument. United States v. Molina, 934 F.2d 1440, 1445 (9th Cir.1991). "Inherent in this latitude is the freedom to argue reasonable inferences based on the evidence," including the inference that, in a case with two conflicting stories, "one of the two sides is lying." Id. In United States v. Laurins, 857 F.2d 529 (9th Cir.1988), cert. denied, 492 U.S. 906 (1989), we held that a prosecutor's statement that the defendant was a liar was not plain error where the prosecutor "indicated that it is 'after listening to all the evidence' that he reached that conclusion." Id. at 539. Based on this qualifying language, this court concluded that the jury could have construed the prosecutor's statement as a comment on the evidence rather than as an assertion of personal belief. Id.
 
 
 55
 In the instant case, the prosecutor merely suggested that Valladares was a credible witness after summarizing the evidence that supported that conclusion. Appellants have failed to demonstrate that the prosecutor's conduct resulted in a miscarriage of justice.
 
 B. Prejudicial Comments
 
 56
 Appellants contend that the prosecutor's closing argument contained numerous remarks intended to inflame the fears and passions of the jury. Appellants object to the following comments:
 
 
 57
 [T]he "flaunting of wealth" that the good members of the jury would work a year to be able to spend the quantities of money that these Defendants spent; about a continuing deceiving of the system; the "crushing" "your bible" and "continuing to lie to you,"; about "preying on the weaknesses of others"; that "I think what you should know at this point is that the greed associated with cocaine brings misery."; that "these people sitting back and enjoying the fruits of that misery"; that it "makes me angry"; ....
 
 
 58
 These remarks were based on the evidence presented at trial or common knowledge. The prosecutor's comment did not constitute misconduct.
 
 
 59
 VII. Proof of a Continuing Criminal Enterprise
 
 
 60
 In order to convict a defendant of engaging in a continuing criminal enterprise (CCE) in violation of 21 U.S.C. § 848, the Government must prove:
 
 
 61
 (1) that the defendant's conduct constituted a felony violation of federal narcotics law; (2) that the described conduct occurred as part of a continuing series of violations of federal narcotics law; (3) that the defendant undertook the activity in concert with five or more persons; (4) that the defendant acted as the organizer, supervisor, or manager of the criminal enterprise; and (5) that the defendant obtained substantial income or resources from the purported enterprise.
 
 
 62
 United States v. Hernandez-Escarsega, 886 F.2d 1560, 1570 (9th Cir.1989), cert. denied, 110 S.Ct. 3237 (1990); United States v. Sterling, 742 F.2d 521, 525 (9th Cir.1984), cert. denied, 471 U.S. 1099 (1985). J. Reyes contends that the district court erred in allowing the Government to argue that any narcotics crimes committed by co-conspirators in furtherance of the conspiracy could be used as proof of "a continuing series of violations" under section 848. We disagree. In Hernandez-Escarsega, we expressly stated that substantive offenses committed by co-conspirators in furtherance of the conspiracy can be attributed to the leader of the conspiracy for purposes of proving a continuing series of violations under CCE. Id. at 1572-73.
 
 
 63
 J. Reyes argues that Hernandez-Escarsega should be "revisited." This court does not have the authority to "revisit" Hernandez-Escarsega. Only an en banc court or the United States Supreme Court may overturn the holding of Hernandez-Escarsega. U.S. v. Salas, 879 F.2d 530, 537 (9th Cir.), cert. denied, 493 U.S. 979 (1989).
 
 VIII. Jury Instruction
 
 64
 A. Reyes contends that the district court erred in refusing to instruct the jury that mere presence and association do not support an inference of participation in a conspiracy. Ninth Circuit law is split as to whether a district court's refusal of a proposed jury instruction is reviewed under an abuse of discretion standard or de novo. United States v. Ayers, 924 F.2d 1468, 1475 (9th Cir.1991); United States v. Whitehead, 896 F.2d 432, 434 (9th Cir.), cert. denied, 111 S.Ct. 342 (1990). This "intra-circuit conflict may be resolved through en banc proceedings." United States v. Slaughter, 891 F.2d 691, 699 (9th Cir.1989). Such proceedings are not necessary in the instant case, however, because the result would be the same under either standard of review. Id.
 
 
 65
 A. Reyes' proposed jury instruction No. 39 reads: "Mere presence at the scene of a crime or close association with conspirators alone will not support an inference of participation in a conspiracy." Although the district court initially refused to give this instruction, the court later included similar language in its instruction No. 41. Instruction No. 41 provides as follows:
 
 
 66
 [O]ne who has no knowledge of a conspiracy, but happens to act in a way which furthers some object or purpose of the conspiracy, does not thereby become a conspirator. Similarly, a person does not become a member merely by associating with one or more persons who are conspirators, nor merely by knowing of the existence of a conspiracy.
 
 
 67
 (emphasis added).
 
 
 68
 In Ayers, we stated that " '[a] trial judge is given substantial latitude in tailoring the instructions so long as they fairly and adequately cover the issues presented.' " 924 F.2d at 1475 (quoting United States v. Cruz, 783 F.2d 1470, 1472 (9th Cir.), cert. denied, 476 U.S. 1174 (1986)); see also United States v. Echeverry, 759 F.2d 1451, 1455 (9th Cir.1985) ("So long as the instructions fairly and adequately cover the issues presented, the judge's formulation of those instructions or choice of language is a matter of discretion." (citation omitted)). The court instructed the jury that mere association is insufficient to support a conviction for conspiracy. The court did not instruct the jury that mere presence is not enough. The failure to do so was not prejudicial because the evidence shows more than mere presence at the scene of a crime. The evidence shows that, in addition to being present at a drug transaction involving 20 ounces of cocaine, A. Reyes had a diaper bag in her possession that was used to transport the cocaine.
 
 IX. Speedy Trial Act and Pretrial Detention
 
 69
 Appellants J. Reyes and Maldonado contend that their right to a speedy trial under 18 U.S.C. § 1361 was violated because the district court failed to commence their trial within 70 days after their arraignments. J. Reyes also argues that the district court failed to articulate a sound justification for granting a six-month continuance of the starting trial date. Finally, J. Reyes and Maldonado contend that the district court violated their statutory and constitutional rights by failing to conduct an automatic review of their pretrial detention status after the trial date was continued from March 20 to July 19. We conclude that the appellants' contentions lack merit.
 
 A. Compliance with the 70-Day Limit
 
 70
 Under the Speedy Trial Act, a defendant must be brought to trial within 70 days after the latter of the filing of the indictment or an appearance by the defendant before a judicial officer. 18 U.S.C. § 3161(c). If a defendant is not brought to trial within the 70-day period, the court must dismiss the indictment upon the defendant's motion. 18 U.S.C. § 3162(a)(2). In calculating the number of days between arraignment and trial, certain periods of delay are automatically exempted, including (1) time consumed by pretrial motions, "from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of such motion," and (2) delay resulting from a continuance granted by the court if the court finds that "the ends of justice served by the granting of such continuance outweighs the best interests of the public and the defendant in a speedy trial." In addition, the 70-day period does not begin to run until the date upon which the last codefendant is arraigned. 18 U.S.C. § 3161(h)(7); see also Henderson v. United States, 476 U.S. 321, 323 & n. 2. (1986) ("All defendants who are joined for trial generally fall within the speedy trial computation of the latest codefendant."); United States v. Morales, 875 F.2d 775, 777 (9th Cir.1989).
 
 
 71
 J. Reyes and Maldonado were arraigned on January 9, 1990. Shortly thereafter, the court ordered that trial by jury would commence March 20, 1990.
 
 
 72
 On January 19, 1990, the original defendants in this case began filing pretrial motions. Co-defendant Samantha Flores filed a motion to sever. J. Reyes filed a motion for enlargement of time to file pretrial motions. On January 23, 1990, a magistrate extended the time to file pretrial motions until March 1, 1990. On January 29, 1990, Maldonado filed a motion to enlarge the time to file pretrial motions and a motion for a continuance of the trial date. Maldonado informed the court that he was prepared to waive his right to a speedy trial and asked the court to postpone the trial for a minimum of six months. On February 15, J. Reyes filed a motion to change the situs of trial. On February 20, J. Reyes filed a motion to dismiss the indictment.
 
 
 73
 On March 20, 1990, J. Reyes, Jose Valladares, Juan Valladares, Maldonado, A. Reyes, Enrique Rivera, Samantha Flores, Avila, and Fernando Mijarez were arraigned on a superceding indictment which added 14 counts of money laundering to the original indictment. Maldonado's motion for a continuance was granted to serve the ends of justice and allow counsel to prepare an adequate defense. The court also scheduled a hearing for May 14, 1990, to resolve all pending motions.
 
 
 74
 On April 10, 1990, co-defendant Gabriel Delgado was arraigned for the first time, following his extradition from California. On April 20, 1990, J. Reyes filed a second motion for enlargement of time to file pretrial motions. On the same day, both Maldonado and J. Reyes filed motions to dismiss on speedy trial grounds. Maldonado filed a third motion for enlargement of time to file pretrial motions on May 3, 1990.
 
 
 75
 On May 14, 1990, the district court heard numerous motions, including oral motions by J. Reyes and Maldonado for reconsideration of detention and J. Reyes and Maldonado's motions to dismiss on speedy trial grounds. The court denied these speedy trial motions on the ground that the clock had not yet begun to run. The district court explained that the speedy trial clock did not begin running until the date that Gabriel Delgado was indicted. The court also noted that the clock was stopped by the continuance, which acted to exclude all time until June 9, 1990. In addition, the district court held that the clock was stopped by the pretrial motions filed by the codefendants, including the motions by J. Reyes and Delgado.
 
 
 76
 A district court's method of computing excludable days under the Speedy Trial act is reviewed de novo. United States v. Wirsing, 867 F.2d 1227, 1229 (9th Cir.1989). The factual findings underlying the district court's computation are reviewed for clear error. Id. As noted above, time granted for a continuance is excludable for purposes of determining a defendant's right to a speedy trial. Thus, the district court in this case properly concluded that the running of the 70-day time limitation was tolled by the "ends of justice" continuance, which postponed trial until July 9, 1990. United States v. Gallardo, 773 F.2d 1496, 1504-05 (9th Cir.1985).
 
 B. "Ends-of-Justice" Continuance
 
 77
 J. Reyes contends that the district court failed adequately to justify its continuance of the trial date from March 20, 1990, to July 9, 1990. This court reviews a district court's decision to grant an "ends-of-justice" continuance for abuse of discretion. Gallardo, 773 F.2d at 1501. The district court's factual findings underlying a decision to grant a continuance are reviewed for clear error. Id.
 
 
 78
 The district court granted a continuance in response to Maldonado's motion which stated that the case was very complex and that he would need at least six months to prepare. The court stated that it was granting a continuance in order "to allow counsel to adequately prepare a defense." The court also noted that it had weighed the ends of justice served by the continuance against the interest of the public and the defendants in a speedy trial. This justification was satisfactory under 18 U.S.C. § 1361(8)(B)(ii) which states that a judge determining whether to grant an ends-of-justice continuance may consider:
 
 
 79
 [w]hether the case is so unusual or complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.
 
 C. Pretrial Detention
 
 80
 J. Reyes and Maldonado contend that the district court violated 18 U.S.C. § 3164(c) by failing to conduct an automatic review of their pretrial detention status after it granted a continuance of the trial date. They also argue that the length of their pretrial confinement violated their sixth-amendment right to a speedy trial and their fifth-amendment right to due process.
 
 1. Violation of 18 U.S.C. § 3164(c)
 
 81
 18 U.S.C. § 3164(c) states that "[f]ailure to commence trial of a detainee [in a period of ninety days following the beginning of continuing detention] ... through no fault of the accused or his counsel ... shall result in the automatic review by the court of the conditions of release." In subsection (b), however, this statute specifically notes that "[t]he periods of delay enumerated in section 3161(h) are excluded in computing the [90-day] time limitation...." Because the time granted by the court for an "ends-of-justice" continuance is properly excludable under 3161(h)(8), the district court's alleged failure to conduct an automatic review of appellants' pretrial detention did not violate § 3164(c).
 
 2. Constitutional Violations
 
 82
 J. Reyes' and Maldonado's Fifth and Sixth Amendment claims confuse the right to a speedy trial with the prohibition of excessive pretrial detention. With respect to the Sixth Amendment, an allegedly excessive period of pretrial detention cannot, in and of itself, violate a defendant's right to a speedy trial. Instead, length of pretrial detention is a factor in determining whether a violation has occurred. United States v. Turner, 926 F.2d 883, 889 (9th Cir.), cert. denied, 112 S.Ct. 103 (1991). To determine whether the government has violated a defendant's constitutional right to a speedy trial, we must weigh the length of the delay, the reasons for the delay, the timeliness and manner of the defendant's assertion of his right to a speedy trial, and the prejudice to the defendant caused by the delay. Id. Prejudice may result from oppressive pretrial incarceration, protracted anxiety and concern, and impairment of trial defense. Id.
 
 
 83
 In the instant matter, at least four months of the delay in proceeding to trial was attributable to pretrial motions filed by J. Reyes and Maldonado. Given the appellants' extensive participation in the delay of trial, we hold that the delay did not deprive them of their right to a speedy trial.
 
 
 84
 We do not reach the merits of J. Reyes' and Maldonado's Fifth Amendment claim of excessive pretrial detention. The question whether they were detained for an unconstitutionally long period of time pending trial is now moot. Cf. United States v. Halliburton, 870 F.2d 557, 562 (9th Cir.), cert. denied, 492 U.S. 910 (1989) (the question whether a defendant was entitled to be free from governmental restraint during his trial is moot, after he has been convicted and sentenced to prison). Addressing the merits of this contention on appeal would result in an inappropriate advisory opinion. Id.
 
 
 85
 X. District Court's Application of the Sentencing Guidelines
 
 
 86
 A. Minimal v. Minor Participant in the Offense
 
 
 87
 A. Reyes contends that she was entitled to be sentenced as a minimal participant rather than as a minor participant under United States Sentencing Guidelines (U.S.S.G.) § 3B1.2 because there was no direct evidence tying her to the conspiracy, and because the jury was allowed to assume that her association with her husband would make her part of the conspiracy. Whether A. Reyes is a minor or minimal participant under § 3B1.2 is a factual determination we review for clear error. See, e.g. United States v. Madera-Gallegos, 945 F.2d 264, 268-69 (9th Cir.1991); United States v. Tamez, 941 F.2d 770, 776 (9th Cir.1991).
 
 
 88
 The sentencing judge concluded that A. Reyes was not a minimal participant because she "was convicted on four separate money-laundering charges, she served as a lookout at drug exchanges and one large drug deal was made using her diaper bag as a carrying case." The sentencing judge also noted that A. Reyes "along with the three other Defendants enjoyed the bulk of the profits from these drug sales." Based on these activities and the evidence of A. Reyes' participation in the conspiracy produced at trial, we conclude that the district court did not clearly err in finding that A. Reyes was a minor participant. See Madera-Gallegos, 945 F.2d at 269 (upholding the district court's determination that the wife of a drug dealer was a minor participant in the conspiracy to sell and distribute drugs because the wife had assisted drug transactions and, as part of one drug deal, the wife carried heroin in her lipstick container).
 
 B. Enhancement for Possession of a Firearm
 
 89
 Maldonado contends that the district court erred by adding two points to his base offense level under U.S.S.G. § 1B1.3(a)(1) for the use and possession of firearms by his co-conspirators in the narcotics trafficking operation. Maldonado argues that this sentence increase was inappropriate because he was never found in possession of a weapon and because there was no evidence that he had ever used a weapon or knew that others used them. We disagree.
 
 
 90
 U.S.S.G. § 2D1.1(b)(1) provides for a two-level upward adjustment in a defendant's base offense level "if a firearm or other dangerous weapon was possessed during the commission of the offense." The district court applied this enhancement to Maldonado through U.S.S.G. § 1B1.3(a)(1), which requires the sentencing judge to consider all acts and omissions that occurred during the commission of the offense for which the defendant otherwise would be accountable. The commentary to section 1B1.3(a)(1) explains that a defendant is otherwise accountable for the "conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant." U.S.S.G. § 1B1.3, comment. (n. 1) (emphasis added). Based on these guideline provisions, we have held that a defendant convicted of conspiracy to distribute cocaine may receive a sentence enhancement for possession of a firearm by a co-conspirator, if the co-conspirator's possession of a weapon was reasonably foreseeable to the defendant. United States v. Vargas, 933 F.2d 701, 710 (9th Cir.1991); United States v. Garcia, 909 F.2d 1346, 1349-50 (9th Cir.1990), cert. denied, 112 S.Ct. 203-04 (1991).
 
 
 91
 The district court specifically stated that it was not applying the firearms enhancement to Maldonado on the basis of any evidence that he personally possessed a weapon. Instead, the district court applied the enhancement on the basis of testimony at trial which revealed that other members of the conspiracy had possession of firearms and used these firearms in drug-related activities. Valladares testified that Maldonado, J. Reyes, and co-defendant Alex Mora had fired weapons at Rene Vera's car, because Vera had stolen a kilogram of cocaine from the drug operation. Valladares' testimony was corroborated by witness Tim Hansen and evidence of the damaged vehicle. Given this proof that guns were used in the course of the conspiracy, the only relevant inquiry is whether Maldonado reasonably could have foreseen his co-conspirators' possession of weapons. Whether a defendant reasonably could have foreseen his co-conspirators' possession of weapons is a factual finding reviewed for clear error. Garcia, 909 F.2d at 1349.
 
 
 92
 The district court did not explicitly adopt the "reasonable foreseeability" language used in the guidelines. Based on the evidence supporting the enhancement, however, we conclude that Maldonado should have foreseen the possession of weapons. In United States v. Willis, 899 F.2d 873 (9th Cir.1990), we upheld a sentence adjustment under § 1B1.3 in the absence of an explicit analysis of reasonable foreseeability by the district court. Id. at 875. First, we noted that there is a frequent relation between narcotics trafficking and the possession of firearms. Second we stated that where "co-conspirators are few in number and know each other well, the court may infer that each participant knew the others' 'methods of operation.' " Id.
 
 
 93
 The Willis rationale is applicable to the instant case. Although there were at least ten co-conspirators, Maldonado was closely involved with the leader of the organization, J. Reyes, both in a managerial capacity and as his brother-in-law. Under these circumstances, this court should hold that it is was not clearly erroneous for the district court to conclude that Maldonado knew of the possession and use of weapons by J. Reyes and the other co-conspirators.
 
 
 94
 Testimony at trial revealed that other members of the conspiracy had possession of firearms and used these firearms in drug-related activities. Moreover, Maldonado was closely involved with the leader of the organization, J. Reyes, both in a managerial capacity and as his brother-in-law. Under these circumstances, we conclude that the district court's finding that Maldonado knew of the possession and use of weapons by J. Reyes and the other co-conspirators was not clearly erroneous.
 
 
 95
 C. Enhancement for a Managerial Role in the Offense
 
 
 96
 Maldonado argues that the district court erred by adding two points to his base offense level under U.S.S.G. § 3B1.1(b) for his role as a "manager or supervisor (but not an organizer or leader)" in the criminal activity for which he was convicted. A district court's finding that a defendant is a manager or supervisor of the criminal activity is a question of fact which is reviewed for clear error. Tamez, 941 F.2d at 777.
 
 
 97
 Maldonado's presentence report recommended a three-level sentence increase pursuant to U.S.S.G. § 3B1.1(b), because the evidence at trial revealed that (1) he was an equal partner with J. Reyes in the operation of the drug conspiracy dating back to 1987, (2) he negotiated for the sale of cocaine and delivered cocaine to codefendants during drug transactions, and (3) he received a larger share of the drug proceeds and exercised more control of the drug distribution activities than the remainder of the codefendants. The district court adopted this recommendation because it concluded that Maldonado was "in a position of equality or near equality with Jose Reyes in the operation and the distribution in Pocatello, Idaho" based on the testimony at trial and from the videotapes showing Maldonado engaging in the sale of cocaine.
 
 
 98
 Maldonado argues that the district court's finding was incorrect because there was no evidence that he was involved in the conspiracy before he arrived in Idaho. The record does not support this contention. The district court specifically stated that its determination was based on "what transpired in Pocatello [Idaho]" and not on what may have happened prior to Maldonado's arrival in that state. The jury found that Maldonado's involvement with J. Reyes was more than merely a family relationship, but also involved a conspiracy to sell drugs and launder monies. The district court did not clearly err in finding that Maldonado played a managerial role in the offense.
 
 
 99
 D. Reduction for Acceptance of Responsibility
 
 
 100
 Maldonado contends that the district court erred in denying him a two-level reduction of his sentence for acceptance of responsibility. Maldonado argues that he was entitled to this reduction because he admitted wrongdoing both in a letter to the court that was appended to the presentence report and at the subsequent sentencing hearing. "Whether or not a defendant has accepted responsibility for his crime is a factual determination we review for clear error." United States v. Restrepo, 930 F.2d 705, 710 (9th Cir.1991). "The district court's determination will not be disturbed 'unless it is without foundation.' " United States v. Rosales, 917 F.2d 1220, 1222 (9th Cir.1991) (quoting U.S.S.G. § 3E1.1, comment. (n. 5)).
 
 
 101
 Section § 3E1.1 of the Sentencing Guidelines permits a two-level reduction if the defendant "clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." See also United States v. Aichele, 941 F.2d 761, 767 (9th Cir.1991) (quoting U.S.S.G. § 3E1.1). The record shows that Maldonado professed his innocence under oath at trial and offered innocent explanations for his conduct. The letter and statements offered by Maldonado in support of a sentence reduction do not clearly demonstrate that he recognized and accepted responsibility for his criminal activity. Maldonado did not admit that he was involved in the conspiracy to sell and distribute drugs in his letter to the court. The district court did not clearly err in finding that Maldonado's belated admission that he lied to the jury and the district court about his involvement in criminal activity did not constitute a clear acceptance of responsibility.
 
 E. Disparate Sentencing
 
 102
 Maldonado contends that the district court's enhancement of his sentence for weapons possession and for his managerial role in the drug operation violates his Fifth Amendment right to equal protection and due process, because the same enhancements were not levied against his codefendants Avila and A. Reyes. This contention is completely without merit.
 
 
 103
 We have repeatedly held that a defendant cannot base a challenge to his sentence solely on the lesser sentence given by the district court to his codefendants. United States v. Carpenter, 914 F.2d 1131, 1135-36 (9th Cir.1990); United States v. Enrique Munoz, 906 F.2d 1356, 1359-60 (9th Cir.1990). A defendant seeking to challenge his sentence must show that his sentence resulted from incorrect or inadmissible information, or from an incorrect application of the Sentencing Guidelines. Carpenter, 914 F.2d at 1136.
 
 
 104
 F. Federal Rule of Criminal Procedure 32(c)(3)(D)
 
 
 105
 Maldonado contends that he is entitled to resentencing because the district court allegedly failed to comply with the procedural requirements of Federal Rule of Criminal Procedure 32(c)(3)(d) which provides:
 
 
 106
 If the comments of the defendant and the defendant's counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing. A written record of such findings and determinations shall be appended to and accompany any copy of the presentence investigation report thereafter made available to the Bureau of Prisons or the Parole Commission.
 
 
 107
 He argues that resentencing is required because the district court failed to append to the presentence report a written record of any findings or determinations which resolved his challenges. We disagree.
 
 
 108
 The record does not indicate whether the district court appended a transcribed copy of its oral findings to the presentence investigation report. In United States v. Roberson, 917 F.2d 1158 (9th Cir.1990), we held that a district court's failure to append a transcribed copy of oral findings is "a ministerial error not requiring resentencing. The appropriate remedy is a limited remand to the district court with instructions that the court append a transcript of its proceedings to the presentence investigation report." Id. at 1159 (citation omitted); see also United States v. Fernandez-Angulo, 897 F.2d 1514, 1516 (9th Cir.1990) (failure to append findings to resolving controverted matters to the presentence report is ministerial error which does not require resentencing). Accordingly, we must "remand to allow the district court to comply with the technical requirements of Rule 32 by ordering, if it has not already done so, that a copy of a transcript of its oral findings be appended to the presentence report." Roberson, 917 F.2d at 1159.
 
 
 109
 The judgment of conviction as to each appellant is AFFIRMED. The sentence imposed on A. Reyes is AFFIRMED. As to Maldonado, the sentence is AFFIRMED but the matter is REMANDED so that the district court may append a transcript of its sentencing proceedings to the presentence investigation report.
 
 
 
 *
 Honorable Harold M. Fong, Chief Judge, United States District Court for the District of Hawaii, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or the courts of this circuit except as provided by 9th Cir.R. 36-3